**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TERRY D. FABRICANT, individually and as the representative of a class of similarly-situated persons,<br><br>                              Plaintiff,<br><br>          v.<br><br>CENTURY SUPPORT SERVICES, LLC and CENTURY DS LLC, a Delaware limited liability company,<br><br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>) |

**CLASS ACTION COMPLAINT**

Plaintiff Terry D. Fabricant ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint (the "Complaint") against Defendants Century Support Services, LLC and Century DS LLC, collectively ("Defendants"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

**INTRODUCTION**

1.      Plaintiff brings this Complaint against Defendants to secure redress because Defendants willfully violated the TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C § 227, *et seq.* ("TCPA") and invaded Plaintiff's privacy by causing unsolicited calls to be made to Plaintiff's and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice message, called Plaintiff's cellular telephone which was listed on the National Do Not Call registry, continued calling Plaintiff after Defendants promised not to contact Plaintiff in violation of Defendant's internal do not call policy, and sent text messages to Plaintiff without prior written express consent.

2.      The defendants made one or more unauthorized calls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") and/or a pre-recorded voice for the purpose of soliciting business from Plaintiff.

3.      The TCPA was enacted to protect consumers from unsolicited telephone calls and unsolicited messages exactly like those alleged in this case. In response to Defendants' unlawful conducts, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities and sending unsolicited text messages to consumers, and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, prejudgment interest, and treble damages (for knowing and/or willful violations).

## PARTIES

4.      Plaintiff Terry D. Fabricant is a citizen of California.

5.      Defendant Century Support Services, LLC is a Delaware limited liability company with its principal place of business in Westmoreland County, North Huntingdon, Pennsylvania.

6.      Defendant Century DS LLC is a Delaware limited liability company. Defendant has its principal place of business in Westmoreland County, North Huntingdon, Pennsylvania.

7.      Whenever in this Complaint it is alleged that Defendants committed any act or omission it is meant that Defendants' officers, directors, employees, and/or agents committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of Defendants' officers, directors, employees, and agents.

## JURISDICTION AND VENUE

2

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute, see Mims v. Arrow Financial Services, LLC, 565 U.S. 368 (2012).

9.      The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in and/or emanated from this District and Defendants have their principle place of business here.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 because this case involves federal questions.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

12.     Defendants are subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through its telemarketing efforts and maintain their principal place of business in this District. Therefore, the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy...." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

14.     Specifically, the TCPA restricts telephone solicitations (i.e., telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also

specifies several technical requirements for autodialers and voice messaging systems–principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

15.    All pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

16.    As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>, the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

     a.     Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

     b.     Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

     c.     Prohibit solicitations to residences that use an artificial voice or a recording.

     d.     Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

     e.     Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to a cellular telephone, or any service for which the recipient is charged for the call.

     f.     Prohibit certain calls to members of the National Do Not Call Registry.

17.    Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered

4

to the person called advertisements or telemarketing messages using an automatic telephone

dialing system or an artificial or prerecorded voice, and the telephone number to which the

signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. §

64.1200(f)(8).

18.    An entity can be liable under the TCPA for a call made on its behalf, even if the

entity did not directly place the call. Under those circumstances, the entity is deemed to have

initiated the call through the person or entity making the call on its behalf.

19.    Finally, with respect to misdialed or wrong-number calls, the  FCC  recently

clarified that "callers who make calls without knowledge of reassignment and with a reasonable

basis to believe that they have valid consent to make  the call  should  be able to  initiate one call

after reassignment as an additional opportunity to gain actual or constructive knowledge of the

reassignment and cease future calls to the new subscriber." *In the Matter of Rules and*

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961,

¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of

reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second

call placed to a wrong number violates the TCPA.

## COMMON FACTUAL ALLEGATIONS

20.    Defendants operate a debt relief and counseling company. Unfortunately for

consumers, Defendants utilized (and continue to utilize) a sophisticated telephone dialing system

to call and text individuals *en masse* promoting its services. Defendants obtained these telephone

numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers.

21.    In Defendants' overzealous attempt to market its services, it placed (and continues

to place) phone calls to consumers who never provided consent to call and to consumers having

no relationship with Defendants. Defendants knowingly made (and continue to make) these

telemarketing calls without the prior express written consent of the call recipients. In fact, Defendants make and continue to make their telemarketing calls even after Plaintiff complained about the calls and Defendants promised to stop making the calls to Plaintiff. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the Class, but also intentionally and repeatedly violated the TCPA.

22.     On or about September of 2018, Defendants contacted Plaintiff on his cellular telephone number *via* ATDS, as defined by 47 U.S.C. § 227(a)(l) without first obtaining Plaintiff's written consent. The calls continued thereafter.

23.     On or about October 5, 2018, one of Plaintiff's attorneys wrote complaining of the prerecorded calls, asserted that Plaintiff had not provided his express written consent and requested that the calls stop. A true and correct copy of the letter is attached hereto as Exhibit A.

24.     Plaintiff's cellular phone number has been included in the National Do Not Call registry prior to 2014.

25.     By letter dated October 26, 2018, Defendants' attorneys promised Defendants' agreed not to make any communications with Plaintiff. A true and correct copy of that letter is attached hereto as Exhibit B.

26.     Plaintiff continued to receive prerecorded calls from Defendants even after Defendants' attorneys by letter dated October 26, 2018 promised that Defendants agree not to make any communications with Plaintiff as follows:

    a.      11-5-2018 prerecorded call from 541-205-4131

    b.      11-6-2018 prerecorded call from 541-205-4131

    c.      11-6-2018 prerecorded call from 541-205-4131

    d.      11-7-2018 two (2) prerecorded calls from 541-205-4131

    e.      11-7-2018 two (2) texts from 541-205-4131

    f.      11-8-2018 prerecorded call from 541-205-4131

    g.      11-9-2018 prerecorded call from 541-205-4131

    h.      11-12-2018 a text from 541-205-4131

    i.      11-13-2018 another text from 541-205-4131

A true and correct copy of the two (2) 11/7/2018 texts are attached as Exhibit C.

A true and correct copy of the one (1) 11/12/2018 text is attached as the top text in Exhibit D.

A true and correct copy of the one (1) 11/13/2018 text is attached as the bottom text in Exhibit D.

27.    Plaintiff was able to answer at least two of the calls and interact with Defendants' autodialer and live representatives, first Christa on November 6th and then Kelly on November 7th, 2018. Once he realized that the November 6th and 7th calls were prerecorded telemarketing calls, Plaintiff asked not to be contacted. Plaintiff's request was ignored.

28.    On information and belief and based on the circumstances of the calls as described above, Defendants called Plaintiff using an ATDS.

29.    Due to the large number of calls and because Plaintiff received calls despite having asked that they stop and despite Defendants' attorneys representation that communication would cease, it was obvious to Plaintiff that a computer was dialing his number.

30.    Plaintiff understood the purpose of Defendants' calls was to have Plaintiff sign up for the debt relief and counseling services offered by Defendants.

31.    Plaintiff is the exclusive user of the cellular telephone that Defendants called.

32.    Defendants' calls to Plaintiff constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(l)(A)(i).

33.    Plaintiff did not provide Defendants with prior express written consent to receive calls to his cellular telephone utilizing an ATDS and artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

34.     Defendants' calls which each utilized an ATDS and artificial or pre-recorded voice made to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1).

35.     Plaintiff has reason to believe Defendants have called, and continue to call, thousands of wireless telephone consumers to market its products and services without consent required by the TCPA.

36.     In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

37.     On behalf of Plaintiff and the Class, Plaintiff seeks an injunction requiring Defendants to cease all wireless telemarketing activities and an award of statutory damages to the Class members, together with prejudgment costs an award reasonable attorneys' fee.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of:

> All persons in the United States who received a call made by or on behalf of Defendants to the individual's cellular telephone through the use of an automatic telephone dialing system, or pre-recorded voice, or any other device having the capacity to dial numbers without human intervention, from four years prior to the date of filing of this Complaint until the date Defendants' conduct ceases, where the call(s) were made without prior express written consent from the recipient to make such call.

Excluded from the class are employees, agents, members, managers of Defendants as well as members of the judiciary.

39.     Plaintiff reserves the right to modify the class definition as the contours and parameters of the class become apparent through discovery in this matter.

40.     Plaintiff and the Class members were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through their agents, illegally contacted Plaintiff and the Class via their cellular telephones by using an ATDS, thereby causing Plaintiff and the Class to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid; Defendants calls included a prerecorded message; and Plaintiff and Class members' privacy was invaded.

41.     The exact size of the Class is presently unknown but can be ascertained through a review of Defendants' records, and it is clear that individual joinder is impracticable. On information and belief Defendants made telephone calls to thousands of consumers who fall within the definition of the Class.

42.     There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

43.     Common questions for the Class include, without limitation:

   a.   Whether Defendants' conduct violated the TCPA;

   b.   Whether Defendants systematically made telephone calls to consumers who did not previously provide Defendants and/or their agents with prior express written consent to receive such phone calls after;

   c.   Whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct;

   d.   Whether Defendants systematically made telephone calls to consumers using any automatic dialing system or pre-recorded voice to any telephone number assigned to a cellular phone service without prior express written consent of the called party; and

    e.   Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

44.    Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

45.    Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions.

46.    Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

47.    This class action is appropriate for class certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and making an award of damages and final injunctive relief appropriate with respect to the Class as a whole.

48.    Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

49.    This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

50.    The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

51.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct.

52.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

53.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

<u>**COUNT I**</u>
<u>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**</u>
<u>**47 U.S.C. § 227 FOR THE USE OF AN ATDS AND PRERECORDED VOICE**</u>

54.     Plaintiff restates, re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

55.     Defendants made unsolicited and unauthorized calls using an ATDS and pre-recorded voice to Plaintiff's and the Class members' cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Class.

56.     Defendants made the calls without obtaining prior express written consent from Plaintiff and the Class.

57.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

58.     Defendants' conduct invaded Plaintiff's privacy.

59.     As a result of Defendants' violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

60.     Because Defendants had knowledge that Plaintiff and the Class did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the Class.

61.     Plaintiff and the class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

<u>**COUNT II**</u>
<u>**VIOLATION OF 47 U.S.C. 227(C)—**</u>
<u>**TELEMARKETING IN VIOLATION OF THE TCPA'S DO NOT CALL PROVISIONS**</u>

62.     Plaintiff restates, re-alleges and incorporates by reference paragraphs 13 through 53 as though fully set forth herein.

63.     Among other things, the TCPA and its accompanying regulations prohibit telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the National Do Not Call Registry, a database established to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written consent.

64.     The TCPA was enacted more than twenty years ago to regulate the explosive growth of telemarketing, which Congress recognized as a nuisance and an intrusive invasion of privacy.

65.     Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

66.     These registrations must be honored indefinitely, or until the registration is

cancelled by the consumer or the telephone number is removed by the database administrator. Id.

67.     Because a telephone subscriber listed on the Registry must take an affirmative

step to register his or her number, a telemarketer who wishes to call a person listed on the

Registry must take a similarly affirmative step, and must obtain the registrant's signed, written

agreement to be contacted by the telemarketer. Id. § 64.1200(c)(2)(ii). The written agreement

must also include the telephone number to which the calls may be placed. Id.

68.     A person whose number is on the Registry and has received more than one

telephone solicitation within any twelve-month period by or on behalf of the same entity in

violation of the TCPA, can sue the violator and seek the greater of actual damages or $500, a

figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

69.     Telemarketers who wish to avoid calling numbers listed on the Registry can easily

and inexpensively do so by "scrubbing" their call lists against the Registry database. The

scrubbing process identifies those numbers on the Registry, allowing telemarketers to remove

those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing

calls.

70.     To avoid violating the TCPA by calling registered numbers, telemarketers must

scrub their call lists against the Registry at least once every thirty-one days. See 16 C.F.R. §

310.4(b)(3)(iv).

71.     Regulations implementing the TCPA also require entities to maintain internal Do

Not Call registries. 47 C.F.R. § 64.1200(d). Once an entity receives a request from a residential

telephone subscriber not to receive calls, the number must be placed on the entity's internal

registry within a reasonable time, not to exceed thirty days from the date of the request. Id. at §

(d)(3).

72.     A seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls.

73.     The provision that establishes a private right of action against an entity that violates the DNC Registry restrictions provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added). Likewise, 47 C.F.R. § 64.1200(d)(3) provides that once a number is added to an entity's internal Do Not Call registry, "the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request."

74.     As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

75.     The agency reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

76.     The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c),

for calls placed "on behalf of" the seller. In re Joint Pet. Filed by Dish Network, 28 FCC Rcd. 6574 (2013).

77.     Between September-November 2018, Plaintiff received numerous telemarketing calls on his cellular telephone line, a number he had listed on the Do Not Call Registry prior to 2014 from Defendants.

78.     These calls, which included at least six calls in a twelve-month period, were placed in an effort to sell Plaintiff debt relief and debt counseling services.

79.     Plaintiff through his attorneys directly indicated to Defendants that he did not wish to receive any telemarketing calls.

80.     Despite Defendants' promise not to communicate with Plaintiff, Defendants continued to place telemarketing calls to Plaintiff and other individuals who were on Defendants' internal "do not call" list and had previously indicated that he did not want to receive any more calls from Defendants.

81.     Because Plaintiff did not provide Defendants with a signed, written agreement to receive Defendants' telemarketing calls, the calls violated the TCPA.

82.     All persons whose telephone numbers were listed on the Do Not Call Registry, and to whom, during the four years prior to the filing of this Complaint, more than one call within any twelve-month period was placed by or at the direction of Defendants, to promote the sale of Defendants' services. Excluded from the class are employees, agents, members, managers of Defendants as well as members of the judiciary.

83.     Plaintiff reserves the right to modify the class definition as the shape and contours of the class become apparent in discover.

84.     The proposed class can be identified through telephone records and databases used in transmitting the telemarketing calls.

85.     The number of class members is believed to be in the thousands, rendering the classes so numerous that individual joinder of all class members is impracticable.

86.     Plaintiff is a member of the proposed class.

87.     There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

      a.   Did Defendants place telemarketing calls to Plaintiff and class members?

      b.   Are Defendants liable under TCPA § 227(c) for telemarketing calls?

      c.   Were the calls placed under Defendants' actual authority?

      d.   Were the calls placed under Defendants' apparent authority?

      e.   Did Defendants ratify the illegal conduct by accepting the benefit of its illegally-generated business and failing to exercise its authority to end the violations?

      f.   Were the calls placed for Defendants' benefit, or on Defendants' behalf?

      g.   Did Defendants place telemarketing class to persons on the National Do Not Call Registry?

88.     Plaintiff's claims are typical of the claims of the classes. Like all class members, he received Defendants' telemarketing calls on a number listed on the national Do Not Call Registry. Like all members of the class, he received Defendants' telemarketing calls on a number that was listed on the company-specific Do Not Call registries.

89.     Plaintiff is an adequate class representative because his interests do not conflict with class members' interests, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in TCPA and other class actions.

90.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

91.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to pursue individual litigation; the low dollar-value of individual claims; the lack of an attorney fee-shifting provision in the TCPA; the fact that class members are unlikely to know that their rights have been violated; and the fact that few if any recipients of Defendants' telemarketing calls have brought private TCPA enforcement actions against Defendants.

92.     In violation of 47 U.S.C. § 227(c), Plaintiff and all class members received telemarketing calls promoting the sale of Defendants' services on cellular telephone lines listed on the National Do Not Call Registry.

93.     Plaintiff and class members received more than one such call in a twelve- month period.

94.     Defendants are liable for those violations under principles of actual authority, apparent authority, and ratification, and because the calls were placed on Defendants' behalf and for their benefit.

**COUNT III**
**VIOLATION OF 47 C.F.R. § 64.1200(D)(3)**
**FAILURE TO HONOR COMPANY-SPECIFIC DO NOT CALL REQUESTS**

95.     Plaintiff restates, re-alleges and incorporates by reference paragraphs 13 through 53 as though fully set forth herein.

96.     In violation of 47 C.F.R. § 64.1200(d)(3), Defendants continued to make telemarketing calls to Plaintiff and class members after they were listed on the Defendants' internal Do Not Call registry.

97.     Plaintiff and class members received more than one such call in a twelve- month period.

98.     Defendants are liable for those violations under principles of actual authority, apparent authority, and ratification, and because the calls were placed by or on Defendants' behalf and for their benefit.

99.     Plaintiff brings Count III of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

100.    All persons during the four years prior to the filing of this Complaint, whose telephone numbers were listed on either the Defendants' company-specific Do Not Call registries or whom Defendants' promised not to contact, but who received telemarketing calls by or at the direction of Defendants, to promote the sale of Defendants' services.

101.    Plaintiff reserves the right to modify this class definition as the shape and contours of the class become apparent through discovery.

<u>**COUNT IV**</u>
<u>**UNSOLICITED TEXT MESSAGES**</u>

102.    Plaintiff restates, re-alleges and incorporates by reference paragraphs 13 through 53 as though fully set forth herein.

103.    On or about November 7, 2018, Plaintiff received two text messages ("Texts"), on November 12, 2018 and November 13, 2018, Plaintiff received additional Texts on his cellular telephone advising him that debt relief and credit card help was available if he called back. True and correct copies of the screen shots of the four (4) Texts are attached hereto as Exhibit C and Exhibit D.

104.    The texts identify that they were sent from telephone number 541-205-4131. Plaintiff is informed and believes, upon such information and belief avers, that Defendants sent text messages to consumers *en masse*.

105.    The texts are advertisements of Defendants' services containing automated content.

106.    On information and belief, Defendants sent or transmitted, or had sent or transmitted on their behalf, the Texts to Plaintiff's cellular telephone using an automatic telephone dialing system as defined by 47 U.S.C. § 227(b)(1)(A) and the FCC. Defendants' system placed the Texts to Plaintiff automatically, using a list or database of telephone numbers, and dialing without human intervention.

107.    Plaintiff never requested, desired, permitted, or otherwise provided his prior express consent to Defendants to send or transmit the Texts or any other texts to his cellular telephone.

108.    Plaintiff never provided his prior express written consent to Defendants to send or transmit the Texts or any other advertisement or telemarketing to his cellular telephone.

109.    As a result of receiving the Texts, Plaintiff wasted data storage capacity, suffered the nuisance, waste of time, and aggravation that accompanies receipt of such unauthorized advertisements, and was subjected to an intrusion upon seclusion and invasion of privacy.

110.    On information and belief, Defendants sent the Texts, or substantially similar text messages, *en masse* to a list of thousands of randomly generated cellular telephone numbers using an automatic telephone dialing system.

111.    On information and belief, Defendants sent these text messages to the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers without human intervention.

112.    On information and belief, the Class members did not provide Defendants with prior express written consent to receive such text messages and, as a result, incurred expenses to

their wireless services, wasted data storage capacity, suffered the aggravation that accompanies receipt of such unauthorized advertisements, and were subjected to an intrusion upon seclusion.

113.     Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this class action on behalf of the following Class:

> All persons or entities who, within the four years prior to the filing of the instant Complaint, received a non-emergency, unauthorized text message to their cellular telephones from Defendants through the use of an automatic dialing system and who did not provide prior express consent and/or prior express written consent to receive such text messages.

Excluded from the Class are the Defendants and their employees, members, managers, agents and members of the Judiciary. Plaintiff reserves the right to amend the class definition as discovery reveals the shape and contours of the class.

114.     Class Size (Fed. R. Civ. P. 23(a)(1)): Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Class is numerous, and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of Class members is at least forty (40) based on Defendants' use of automated text message content.

115.     Commonality (Fed. R. Civ. P. 23 (a)(2)): Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

> a.   Whether Defendants sent non-emergency text messages to Plaintiff and the Class members' cellular telephones using an automatic telephone dialing system;
>
> b.   Whether Defendants had prior express written consent to send its automated text messages;
>
> c.   Whether Defendants' conduct was knowing and/or willful;

d.  Whether Defendants are liable for damages, and the amount of such damages; and

e.  Whether Defendants should be enjoined from such conduct in the future.

116.    Typicality (Fed. R. Civ. P. 23(a)(3)): Plaintiff's claims are typical of the claims of all Class members. Plaintiff received the same or substantially similar unsolicited text message as the other Class members sent by or on behalf of Defendant advertising goods and services of the Defendant during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and all Class members based upon the same federal statute. Defendant has acted in the same or in a similar manner with respect to the Plaintiff and all the Class members by sending Plaintiff and each member of the Class the same or substantially similar text messages encouraging Plaintiff and the members of the Class to use Defendants' debt relief and counseling services.

117.    Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4)): Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

118.    Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)): Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

a.  Proof of Plaintiff's claims will also prove the claims of the Class without the need for separate or individualized proceedings;

b.  Evidence regarding defenses or any exceptions to liability that Defendants may assert and attempt to prove will come from Defendants' records and will not require individualized or separate inquiries or proceedings;

21

    c.   Defendants have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class members;

    d.   The amount likely to be recovered by individual Class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

    e.   The case is inherently manageable as a class action in that:

        i.   Defendants identified persons or entities to receive the unauthorized text messages and Defendants' computer and business records will likely enable Plaintiff to readily identify class members and establish liability and damages;

        ii.   Liability and damages can be established for Plaintiff and the Class with the same common proofs;

        iii.   Statutory damages are provided for in the statute and are the same for all Class members and can be calculated in the same or a similar manner;

        iv.   A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

        v.   A class action will contribute to uniformity of decisions concerning Defendants' practices; and

        vi.   As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

119.    The Texts Defendants sent Plaintiff are advertisements as defined by 47 C.F.R. § 64.1200(f)(1) because it promotes Defendants' services.

120.    Defendants and/or their agents sent the Texts, or substantially similar unsolicited automated text messages to the cellular telephone number of Plaintiff and the other Class members *en masse* without their prior express consent and prior express written consent.

121.    Defendants sent the text messages, or had them sent on their behalf, using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

122.    Defendants utilized equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention.

123.    By sending the unsolicited text messages to Plaintiff and the Class, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Terry Fabricant, individually and on behalf of the Class, respectfully requests the following relief against Defendants, Century Support Services, LLC and Century DS LLC, jointly and severally,

a.   An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Anderson + Wanca as lead Class Counsel.

b.   An award of statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.   An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

d.  Injunctive relief prohibiting the Defendants' conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.  Pre-judgment interest from the date Defendants' statutory torts were committed until the date of judgment;

f.  An award of reasonable attorneys' fees and court costs in this action;

g.  All other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff and the Class demand a jury trial on all issues so triable.

Dated:          January 18, 2019                    Respectfully Submitted,

/s/ Clayton S. Morrow
Clayton S. Morrow
**Morrow & Artim, PC**
304 Ross Street, 7th Floor
Pittsburgh, PA 15219
Email: csm@ConsumerLaw365.com
Telephone: (412) 209-0656
Facsimile: (412) 386-3184

Ryan M. Kelly (*Pro Hac* to be filed)
**Anderson + Wanca**
3701 W. Algonquin Rd. Ste#500
Rolling Meadows, IL 60008
Email: rkelly@andersonwanca.com
Telephone: (847) 368-1500
Facsimile: (847) 368-1501

**ATTORNEYS FOR PLAINTIFF**